**C.K. and J.K. as next friends of the minor child A.K., et al., Plaintiffs,**

v.

**BELL COUNTY BOARD OF EDUCATION, et al., Defendants.**

**Civil No. 11–296–ART.**

United States District Court, E.D. Kentucky, Southern Division, London.

March 14, 2012.

882

Brittany B. Koch, Daniel Luke Morgan, Jaron P. Blandford, McBrayer, McGinnis, Leslie & Kirkland, PLLC, Lexington, KY, for Plaintiff.

Larry G. Bryson, Larry G. Bryson, P.S.C., Martha L. Brown, Kelley, Brown & Breeding, London, KY, Shelli Deshea Dunn Yoakum, Bowling & Johnson, PSC, Middlesboro, KY, Brent L. Caldwell, Caldwell, Caldwell & Caldwell, LLP, Charles David Cole, Sturgill, Turner, Barker & Moloney PLLC, Joshua Michael Salsburey, Morgan Todd Osterloh, Sturgill, Turner, Barker & Moloney PLLC, Lexington, KY, for Defendant.

Jonathan C. Shaw, Porter, Schmitt, Banks & Baldwin, Paintsville, KY, for Defendants Travis Phipps in his official capacity and Donna Phipps.

## ORDER

AMUL R. THAPAR, District Judge.

Defendants Travis Phipps, Donna Phipps, and Patricia Howard have moved for summary judgment on the plaintiffs' official-capacity § 1983 claims, official-capacity state-law claims, and § 1985(3) civil conspiracy claim. R. 30. Discovery is still at an early stage, but the plaintiffs are incapable of succeeding on these claims as a matter of law. The Court will therefore grant the motion and award summary judgment to the defendants.

## BACKGROUND

In 2003, A.K. was an eight-year-old boy attending third grade at Frakes Elementary School in Bell County, Kentucky.[1] At some point that year, A.K.'s substitute teacher, Defendant Travis Phipps, sexually assaulted him in one of the school's bath-

---

1. The parties dispute many of the facts in this case, but for the purpose of summary judgment, the Court will draw all inferences and view all facts in the light most favorable to the plaintiffs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

rooms. Phipps threatened to harm A.K. if he told anyone what happened, and Phipps fondled A.K. again later that year. A.K. told no one—including his parents—what happened, but other teachers noticed that he became more distant and withdrawn.

The same year, other Frakes parents complained to the school's principal, Defendant Patricia Howard, about the way Phipps treated his students. According to the complaints, Phipps yelled at and intimidated the children in his class, and he would frequently place male students on his lap.

In 2010, A.K. told his parents that he had been abused by a teacher when he was in the third grade. Mental health professionals diagnosed A.K. with post-traumatic stress disorder, but through counseling, A.K. eventually revealed that a tall man with curly hair had abused him. That description matched Phipps. C.K. and J.K., the parents of A.K., met with the new principal at Frakes, Steve Ely, and the Bell County schools' superintendent, Defendant George Thompson, and told them about Phipps's behavior. According to J.K., Thompson said that he could not remove Phipps from his teaching assignment because he feared that Phipps might sue the school system.

When Thompson failed to act, A.K.'s mental health counselor contacted the Kentucky State Police and the Kentucky Cabinet for Health and Family Services ("Family Services"). In March 2011, Family Services substantiated the allegations against Phipps, finding that A.K. made "credible and consistent statements" about the abuse. Investigation Notification Letter, R. 1–3. Phipps appealed the findings, and Family Services scheduled a hearing for summer 2011.

But no hearing was held. Before the scheduled date, the plaintiffs allege that Thompson and Defendant Donna Phipps—Travis's mother—entered Frakes after school hours. Donna, who worked at the Bell County Board of Education's central office, allegedly helped Thompson obtain her son's personnel records, and the two left Frakes carrying an unknown box. Travis Phipps then asked to cancel the hearing. As of October 26, 2011, when the plaintiffs filed their complaint, the hearing had not been rescheduled.

The plaintiffs have sued Travis Phipps, Donna Phipps, George Thompson, Patricia Howard, and John and Jane Doe employees of the Board, all in their individual and official capacities. The complaint also names the Bell County Board of Education as a defendant, and alleges nine counts, including violations of 42 U.S.C. §§ 1983 and 1985(3) and accompanying state-law tort claims. Defendants Travis and Donna Phipps have filed a motion for summary judgment on some of these counts, which Patricia Howard has joined in part. R. 30, R. 48.

## DISCUSSION

■ Before addressing the substance of the defendants' motion, the Court must clear up a procedural question. The plaintiffs believe summary judgment is inappropriate because the defendants' arguments are "premised on Rule 12, but [their] admission to subject matter jurisdiction and the fact [they] filed an Answer preclude [them] from seeking dismissal through that method." R. 49 at 10. True, a defendant can waive some defenses under Federal Rule of Civil Procedure 12(b). But the failure to raise a defense in a responsive pleading has nothing to do with a defendant's ability to move under Rule 12(c) for judgment on the pleadings or seek summary judgment under Rule 56 before the close of discovery. Rule 12(c) allows a court to award judgment if, based solely on the pleadings, "no material issue of fact exists" and the moving party "is

entitled to judgment as a matter of law." *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 526 (6th Cir.2006) (citation omitted). Rule 56 uses the same standard, but allows a court to evaluate evidence outside the pleadings. *See* Fed.R.Civ.P. 56(a). Here, the defendants made their motion under Rule 56, but they did not ask the Court to look beyond the pleadings. Instead, they argued that based on the facts alleged in the complaint, they are entitled to judgment as a matter of law. *See* R. 30–1 at 4. The defendants might therefore have moved under either Rule 12(c) or Rule 56 because the two rules' standards are "identical." 5C Charles Alan Wright & Arthur R. Miller, et al., *Federal Practice & Procedure* § 1369 (3d ed. 1998). And unlike Rule 12(c), Rule 56 expressly gives a court the flexibility to grant summary judgment on some, but not all, claims in a case. *Id.;* Fed.R.Civ.P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."). Thus, the defendants' decision to use Rule 56 does not bar their motion.

Why do the plaintiffs believe the defendants made a Rule 12 motion? Their confusion likely stems from the fact that discovery is still at an early stage in this case. *See* R. 49 at 4 (arguing that the motion for summary judgment should be denied as "premature"). The defendants have asked for summary judgment on three sets of claims: official-capacity § 1983 claims against the individual defendants; official-capacity state-law claims against Travis Phipps; and the 42 U.S.C. § 1985(3) claim against Donna Phipps. Defendant Patricia Howard has also asked the Court to dismiss the plaintiffs' official-capacity § 1983 claim against her. R. 48. On all three issues, the defendants believe they are entitled to judgment as a matter of law "without the need for factual analysis outside the allegations of . . . the complaint,"

R. 30 at 4, so the Court will consider each in turn.

## I. Official–Capacity § 1983 Claims Against Travis and Donna Phipps

The defendants have first asked for summary judgment on the plaintiffs' official-capacity § 1983 claims. An official-capacity claim against the agent of a government entity is akin to a claim against the entity. *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. . . . [An] official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (citations omitted); *Claybrook v. Birchwell,* 199 F.3d 350, 356 n. 4 (6th Cir.2000) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents.") A plaintiff may sue a local government directly for damages and injunctive or declaratory relief, *see Monell v. N.Y.C. Dept. of Social Servs.,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), so "[t]here is no longer a need to bring official-capacity actions against local government officials." *Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099.

The plaintiffs have sued Travis Phipps, Donna Phipps, and Patricia Howard—all past or present employees of the Board of Education—in their individual and official capacities. But the plaintiffs have also sued the Board of Education itself. As a matter of housekeeping, the Court will therefore dismiss the redundant official-capacity claims against the Phippses and Howard. *See C.A. ex rel. G.A. v. Morgan Cnty. Bd. of Educ.,* 577 F.Supp.2d 886, 890 (E.D.Ky.2008) (dismissing § 1983 claims against school superintendent, administra-

tors, and teachers in their official capacities as redundant to the claim against the school district); *Doe v. Claiborne Cnty., Tenn.,* 103 F.3d 495, 509 (6th Cir.1996). Of course, at the end of the day this does not change much. The plaintiffs may still proceed with their § 1983 claim against the Board of Education and their claims against the defendants in their individual capacities.

## II. Official–Capacity State–Law Claims Against Travis Phipps

■ Travis Phipps also argues that he is immune from the plaintiffs' state-law claims against him in his official capacity. The plaintiffs acknowledge that Phipps would be immune if his employer, the Board of Education, is immune from these claims. R. 49 at 7–8. They argue, however, that it is too early to determine whether the Board of Education was performing a governmental or proprietary function. *See Yanero v. Davis,* 65 S.W.3d 510, 527 (Ky.2001). If the former, Phipps is immune; if the latter, he is not. *Id.*

■ Even in the light most favorable to the plaintiffs, the complaint does not allege that the Board of Education performed a proprietary function. Governments perform proprietary functions when they engage "in a business of a sort ... engaged in by private persons or corporations for profit." *Id.* at 520 (quoting *Gross v. Ky. Bd. of Managers,* 105 Ky. 840, 49 S.W. 458 (1899)). The Kentucky Supreme Court held in *Yanero* that a county board of education performed a government function when it allowed its schools to compete in interscholastic athletics. *Id.* at 527. The divide between governmental and proprietary functions might be a close call for high school sports. After all, many private corporations organize sporting events, and many high schools turn a profit from their sports teams. But here, the plaintiffs have alleged that an agent of the county board of education molested a student on school grounds during school hours while employed as a school teacher. Compl., R. 1 ¶¶ 19–22. These alleged actions are unquestionably disgusting, but Phipps was employed in a governmental function—teaching school. *See Breathitt Cnty. Bd. of Educ. v. Prater,* 292 S.W.3d 883, 887 (Ky.2009) ("[A]ctivities in direct furtherance of education will be deemed governmental rather than proprietary."). The Board of Education, and with it, Phipps, are therefore immune from any official-capacity claims on state law grounds. Again, this ruling does not affect the plaintiffs' ability to proceed with individual-capacity claims against Phipps.

## III. 42 U.S.C. § 1985(3) Claim Against Donna Phipps

■ The plaintiffs have also alleged that Donna Phipps violated § 1985(3) by conspiring with the Board of Education and George Thompson. They claim the conspirators deprived A.K. of "equal protection of the laws by taking [Travis] Phipps'[s] personnel record" from Frakes Elementary School. To establish a civil conspiracy under § 1985(3), a plaintiff must show that (1) "two or more persons ... conspire[d]" (2) "for the purpose of depriving ... [the claimant] of the equal protection of the laws" due to racial or class-based animus and that the conspirators (3) committed an act "in furtherance of the object of such conspiracy" (4) that "injured" the claimant. *Maxwell v. Dodd,* 662 F.3d 418, 422 (6th Cir.2011) (quoting 42 U.S.C. § 1985(3)).

■■ Here, the plaintiffs have not alleged that Phipps and Thompson acted because of racial or class-based animus. Section 1985(3) requires that conspirators act with "invidiously discriminatory motivation"—otherwise the statute would extend federal constitutional protection to

nearly all tort victims. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see also* Cong. Globe, 42d Cong., 1st Sess. 485 (1871) (remarks of Rep. Cook) (disclaiming the notion that "Congress has a right to punish an assault and battery when committed by two or more persons within a State."). The plaintiffs claim that the conspirators prevented A.K. "from being able to fully avail himself of the legal protections to which he is entitled to recover for the damages occasioned by this deprivation by these Defendants." Compl., R. 1 ¶ 75. Even if those actions were enough to violate equal protection, they do not reveal any animus on the basis of A.K.'s race, sex, or other personal characteristic. *Cf. Maxwell,* 662 F.3d at 422–23 (holding that evidence police officers used racially derogatory slurs was insufficient to support a § 1985(3) claim). For their part, the plaintiffs argue that an equal protection claim can be premised on "a class of one." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). But § 1985(3) does not encompass all equal protection violations—only discrimination against "those so-called discrete and insular' minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." *Volunteer Med. Clinic, Inc. v. Operation Rescue,* 948 F.2d 218, 224 (6th Cir. 1991). A.K. may have received different treatment, but has not claimed he is a member of a protected class. As a result, the plaintiffs' § 1985(3) claim cannot succeed.

### CONCLUSION

Accordingly, it is **ORDERED** that the motion for partial summary judgment by Travis and Donna Phipps, R. 30, is **GRANTED.** Summary judgment is **GRANTED** in favor of the defendants on the following claims:

(1) Official-capacity § 1983 claims against Travis Phipps, Donna Phipps, and Patricia Howard;

(2) Official-capacity state-law claims against Travis Phipps;

(3) Claims under § 1985(3) against Donna Phipps.

All of the plaintiffs' other claims, including individual-capacity § 1983 and state-law claims against Travis and Donna Phipps, remain active.